UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT TODD MORSE,

           Petitioner,

    v.

CRAIG KOENIG,

           Respondent.

No.  2:21-cv-01667-TLN-KJN P

FINDINGS & RECOMMENDATIONS

I.  Introduction

      Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his December 4, 2017 conviction for forcible rape and lewd acts upon three children.  Petitioner was sentenced to 90 years to life plus six years in state prison.  Petitioner raises the following claims: (1) prosecutorial misconduct for misstating the presumption of innocence during closing argument; (2) denial of motion to sever counts 12 and 13 violated his due process rights; (3) admission of prior sexual offenses violated his due process rights; (4) errors were cumulatively prejudicial; (5) insufficient evidence to support conviction on count 1; (6) denial to hear and rule on defendant's motion for a new trial violated his due process rights: (7) ineffective assistance of counsel for failing to present witnesses and exculpatory evidence; (8) ineffective assistance of counsel for failing to file a motion for a new trial based on errors in jury verdict forms; (9) these additional errors were

1  cumulatively prejudicial.  After careful review of the record, this Court concludes that the petition
2  should be denied.

3  II.  Procedural History

4      On October 16, 2017, a jury found petitioner guilty of forcible rape and lewd acts upon
5  three children.  (ECF No. 12-7.)  On August 6, 2018, petitioner was sentenced to 90 years to life
6  plus six years in state prison.  (Id.)

7      Petitioner appealed the conviction to the California Court of Appeal, Third Appellate
8  District.  (ECF Nos. 12-10 to 12-11.)  The Court of Appeal affirmed the conviction on July 16,
9  2019.  (ECF No. 12-12.)

10     Petitioner filed a petition for review in the California Supreme Court, which was denied
11  on September 18, 2019.  (ECF Nos. 12-13 to 12-14.)  He also filed states habeas petitions, which
12  the state courts denied.  (ECF Nos. 12-15 to 12-21.)

13     Petitioner filed the instant petition on September 1, 2021.  (ECF No. 1.)  Respondent filed
14  an answer on January 21, 2022.  (ECF Nos. 11 and 12.)

15  III.  Facts[1]

16     After independently reviewing the record, this court finds the appellate court's summary
17  accurate and adopts it herein.  In its unpublished memorandum and opinion affirming petitioner's
18  judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District
19  provided the following factual summary:

20         In 2015, after a program at school, K. told one of her teachers she
21     had been inappropriately touched and fondled when she was
       younger. She wanted advice on whether she should tell her parents.
22     The teacher reported the allegations. As a result of this report,
       Sergeant Brandon Bean investigated the matter. During the course of
23     investigating, Bean learned defendant also molested K.'s older sister,
       Ke. Bean ran a full background check on defendant and learned
24     defendant had a prior conviction from New York for sexual offenses
       committed against his niece, D. Bean spoke with D. in 2015 and
25     learned defendant had also committed crimes against D. in 1989 or
       1990 in California that had never been reported.

26

27  ---
    [1]  The facts are taken from the opinion of the California Court of Appeal for the Third Appellate
    District in People v. Morse, No. C086129, 2019 WL 3162132 (Cal. Ct. App. July 16, 2019), a
28  copy of which was lodged by respondent as ECF No. 12-12.

**D.'s Testimony**

D. lived in New York. In 1989 or 1990, when she was 12 years old, she visited her grandmother in California. On this trip, defendant raped her for the first time. While at her grandmother's home, D. slept on the sectional couch in the living room. Everyone in the house went to bed except defendant, who was still in the living room with D. He passed her a note asking if she had ever had intercourse. She answered she did not know what that was. After passing more notes, she left the room to change. When she returned to the living room, defendant was watching a pornographic movie. She turned the movie off. The next thing D. remembered, she was on the couch, defendant had climbed on top of her, and put his penis in her vagina. As she was crying, he put his fingers on her lips, and promised her it would not hurt. It was a few years before D. saw defendant again.

Later, defendant lived in New York, about 30 minutes away from D.'s home. She would see him regularly at family gatherings and holidays. During this time, defendant forced D. to have sex with him on multiple occasions. This included when she would spend the night at defendant's girlfriend's house after babysitting for them. He would come into her bedroom in the middle of the night and have sex with her. He also forced her to have sex at her 14th or 15th birthday party. At that party, they were riding four wheelers in a field, D. ended upon the ground with no one else around. Defendant took her pants down, put his penis in her vagina, and "pleasured himself."

When D. was 16 years old, defendant raped her again. The day before the rape, he had asked her to stay home from school and she refused because she knew he intended to have sex with her, as he had on many other occasions. When she got home from school, she heard the door open and panicked, because she knew what was going to happen. He came to her bedroom, started kissing her, fondling her breasts, and undressed her. She resisted and told him to stop, but he did not. He pushed her down on the bed and orally copulated her, then he removed his pants and put his penis in her vagina. He pulled his penis out, ejaculated on her stomach, got dressed and left. He told her not to say anything. D.'s boyfriend called her shortly after defendant had left and she told him what happened. She also told her parents and called the police. As a result of this assault, defendant was convicted of sexual abuse in the first degree in New York.

Defendant acknowledged he lived in California in 1989 and 1990 when D. came to visit his mother, her grandmother. He remembered D. visiting, but denied he had ever asked her to watch a movie or had sexual intercourse with her in California. He admitted he had sexual intercourse with her a couple of times later in New York, but denied he had forced her to have sex. He claimed she first initiated sex with him by orally copulating him after she babysat his son.

**Ke. & K.**

Ke. and K.'s aunt[1] and her live-in boyfriend, defendant, babysat the sisters after school and during the day in summer. Although they did not call him uncle, they viewed the relationship with him as an uncle.

3

When Ke. was between 9 and 14 years old and K. was between 6 and 10 years old, they would go to defendant's house after school and would be there for a couple of hours. During summer, K. would spend full days there. The home had a pool and defendant would swim with Ke., K., and their cousin.

[N.1 The aunt was Ke. and K.'s stepmother's sister.]

Defendant repeatedly molested both Ke. and K. in the pool. When Ke. was between 10 and 12 years old, defendant regularly grabbed her breasts from behind her when they were in the pool. In the pool, he pulled her against him from behind and put his hands down her shorts, touched her vagina, and rubbed her clitoris. He also came up behind her and grabbed and pinched her butt. Ke. estimated the molestations occurred once or twice a week in the summer over the course of a few summers.

Defendant also repeatedly molested K. in the pool. Once, when she was eight or nine years old, defendant was wearing goggles in the pool, defendant swam under the water and moved K.'s bathing suit bottom to look at her vagina. She felt him hook his finger under the band of her bathing suit and move it. His head was approximately 18 inches away from her vagina. The cousin was also in the pool, but was swimming around so he did not see this happen. Another time, when K. was around the same age, defendant held her floating on her back, and positioned K. with her legs over the side of the pool and the jet of the pool streaming onto her vagina. He asked her if it felt good. She answered no and swam away. Defendant also threw K. in the pool. Before throwing her, he positioned her on his lap in such a way she could feel the pressure of his penis against her bottom and his hands lingered on her bottom.

Defendant molested K. and Ke. on other occasions in the home. One time while K. was playing a Game Boy in the cousin's bedroom, defendant came in the room, standing behind her, he started rubbing K.'s arms and shoulders, then put his fingers in her shirt and lifted it to look down her shirt. Defendant would also walk by Ke. in the house, and grab her butt and "stuff like that," a lot.

Defendant used a vibrator with both K. and Ke. When Ke. was 12 or 13 years old, her aunt had left to take her boys to a soccer game and left Ke. with defendant at the house. Ke. fell asleep on the couch. She woke up with defendant next to her, touching her on her genitals, and rubbing her vagina and clitoris under her pants. She told him to stop and he told her, "Shut up, you know you like it." He went into his bedroom, got a sex toy and came back with a vibrator with a remote control attached to it. It was small, oval shaped, and pink or purple. He was kneeling in front of her, put the vibrator down her pants, turned it on, and kept moving it up and down. He did not stop until he heard footsteps coming up the stairs as her aunt, K., and the cousin came home. She did not tell anyone because she did not think they would believe her, particularly because at that time her aunt always thought she was lying. When K. was between 8 and 10 years old, during a game of hide and seek, while K. was hiding in a chair with her lower back exposed, defendant came up behind her and put a

4

silver small bullet shaped vibrator against her lower back, just above the crack of her buttocks. He moved it side to side across her back. She told him to go away because she was hiding.

During his investigation, Bean found defendant's driver's license alongside various sex toys in a chest of drawers in defendant's bedroom. Specifically, there was a silver "bullet" vibrator attached to a remote control. There was also a rubbery purple item that could be placed over the vibrator.

When she was in 6th or 7th grade (between 2005 and 2007), Ke. told her friend, T., that she had been touched inappropriately. Years after the molestation, Ke. also told her mother about it. In 2013, K. told the cousin defendant had touched her inappropriately. Although they were close, the sisters never told each other what defendant had done.

In the middle of her freshman year in high school, Ke. moved out of town to live with her mother. K. stopped going to defendant's house because of the molestation when she was in 7th or 8th grade.

Defendant acknowledged he threw the children in the pool from his knee with his hand on their bottom, but denied there was any sexual intent. He denied ever moving K.'s bathing suit bottom to look at her vagina or positioning her with the water jet hitting her vagina. He denied ever touching Ke.'s breasts in the pool, putting his hands in her shorts or grabbing her butt. He denied putting his hands in K.'s shirt and looking at her breasts, stating his hands were too big to fit down a "little kid's shirt." He admitted he had put a massager on K.'s back, not a vibrator, in a playful way to "make her jump." He acknowledged he kept sex toys in a bedroom drawer, but denied ever touching Ke. with it or showing it to her.

(ECF No. 12-12 at 2-6.)

IV.  <u>Standards for a Writ of Habeas Corpus</u>

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See <u>Wilson v. Corcoran</u>, 562 U.S. 1, 5 (2010); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

1

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2

3

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

5    28 U.S.C. § 2254(d).

6         For purposes of applying § 2254(d)(1), "clearly established Federal law" consists of

7    holdings of the Supreme Court at the time of the last reasoned state court decision. Thompson v.

8    Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38, 44-45

9    (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S.

10   362, 412 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly

11   established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859

12   (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may

13   not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a

14   specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S.

15   Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)).

16   Nor may it be used to "determine whether a particular rule of law is so widely accepted among

17   the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct."

18   Id. Further, where courts of appeals have diverged in their treatment of an issue, there is no

19   "clearly established federal law" governing that issue. See Carey v. Musladin, 549 U.S. 70, 77

20   (2006).

21        A state court decision is "contrary to" clearly established federal law if it applies a rule

22   contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

23   precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003).

24   Under the "unreasonable application" clause of § 2254(d)(1), "a federal habeas court may grant

25   the writ if the state court identifies the correct governing legal principle from [the Supreme

26   Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case."[2]

27

28   ---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence

1    Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413); see also Chia v.

2    Cambra, 360 F.3d 997, 1002 (9th Cir. 2004).  In this regard, "a federal habeas court may not issue

3    the writ simply because that court concludes in its independent judgment that the relevant state-

4    court decision applied clearly established federal law erroneously or incorrectly.  Rather, that

5    application must also be unreasonable."  Williams, 529 U.S. at 411; see also Schriro v. Landrigan,

6    550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 ("It is not enough that a federal habeas court,

7    in its 'independent review of the legal question,' is left with a "'firm conviction'" that the state

8    court was "'erroneous"'").  "A state court's determination that a claim lacks merit precludes

9    federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state

10    court's decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v.

11    Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus

12    from a federal court, a state prisoner must show that the state court's ruling on the claim being

13    presented in federal court was so lacking in justification that there was an error well understood

14    and comprehended in existing law beyond any possibility for fair-minded disagreement."  Id. at

15    103.

16          If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

17    court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v. Woodford,

18    527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)

19    (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

20    § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

21    considering de novo the constitutional issues raised.").

22          The court looks to the last reasoned state court decision as the basis for the state court

23    judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

24    If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

25    previous state court decision, this court may consider both decisions to ascertain the reasoning of

26    the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a

27

28    presented in the state court proceeding."  Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99.  This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100.  Similarly, when a state court decision on petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 298-301 (2013) (citing Richter, 562 U.S. at 98).  If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court.  See, e.g., Wiggins v. Smith, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853.  Where no reasoned decision is available, the habeas petitioner has the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012).  While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court reviews the state court record to "determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 101.  It remains the petitioner's burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's

8

1   claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

2   habeas court must review the claim de novo.  Stanley, 633 F.3d at 860 (citing Reynoso v.

3   Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006)).

4   V.  Petitioner's Claims

5       A.  Prosecutorial Misconduct (Claim One)

6          Petitioner claims that the prosecutor committed prosecutorial misconduct by misstating

7   the presumption of innocence in closing arguments, and to the extent that his defense counsel

8   forfeited this claim by not objecting to it during trial, his counsel was constitutionally ineffective.

9   (ECF No. 1 at 41-51.)  In response, respondent argues that petitioner's prosecutorial misconduct

10  claim is procedurally barred.  On the merits, respondent asserts that the state court's denial of the

11  misconduct and ineffective assistance of counsel claim was reasonable.  (ECF No. 11 at 20-.)

12         In the last reasoned opinion, the state appellate court considered and rejected petitioner's

13  claim.

### Prosecutorial Misconduct

Defendant contends the prosecutor committed prejudicial
misconduct by misstating the presumption of innocence in closing
argument. Recognizing defense counsel did not object to this
argument, he also argues counsel was ineffective.

### Background

Prior to closing argument, the trial court orally instructed the jury on
the presumption of innocence. The court instructed the jury: "The
fact that a criminal charge has been filed against the defendant is not
evidence that the charge is true. You must not be biased against the
defendant just because he has been arrested, charged with a crime, or
brought to trial.

"A defendant in a criminal case is presumed to be innocent. This
presumption requires that the People prove a defendant guilty beyond
a reasonable doubt. Whenever I tell you the People must prove
something, I mean they must prove it beyond a reasonable doubt
unless I specifically tell you otherwise.

"Proof beyond a reasonable doubt is proof that leaves you with an
abiding conviction that the charge is true. The evidence need not
eliminate all possible doubt because everything in life is open to
some possible or imaginary doubt.

"In deciding whether the People have proved their case beyond a
reasonable doubt, you must impartially compare and consider all the

9

evidence that was received throughout the entire trial. Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty." (CALCRIM No. 220.)

The trial court also instructed the jury that if any of "the attorneys' comments on the law conflict with my instructions, you must follow my instructions." (CALCRIM No. 200.)

The prosecutor twice discussed the presumption of innocence in her closing argument. First, in discussing defendant's testimony, "[L]et me start by saying this: The burden of proof in this case, like in every single courtroom across this country, rests squarely on the prosecution. [¶] He is presumed innocent unless and until he is proven guilty beyond a reasonable doubt. But that doesn't mean that his statements and when he testifies as a witness, he gets treated any differently than any other witness."

At the end of her closing argument, after arguing the testimony of the three victims who independently disclosed and told their stories, the corroborating evidence, the defendant's testimony, and the elements of the charges and how the evidence met those elements, the prosecutor argued: "The presumption of innocence is the cornerstone of our criminal justice system. It applies to every criminal case in the entire United States and it is an important one. But what I will remind you, now that we're getting at the end of this case, is that that presumption of innocence doesn't only protect innocent people. Guilty people are presumed, at the start of the case, innocent, too. We have removed that cloak. You get to see and determine for yourselves what lies beneath. He demanded a trial, like every person in the United States does, and we gave him that. [Ke.], [K.], and [D.], and law enforcement did their jobs. Now, I'm asking you to do yours." Defense counsel did not object to this statement.

In defense counsel's closing argument, he repeatedly argued it was the People's burden to prove defendant guilty beyond a reasonable doubt. He argued, "I'm not asking you to find my client innocent. It's not what we're here to do. They have a burden to prove my client is guilty beyond a reasonable doubt. It's not your job to find him innocent. It's your job to determine whether the People have evidence to meet their burden before you convict my client." And, again later, defense counsel argued, "[I]t's your duty to ensure that the People have proven beyond a reasonable doubt the charges against my client. [¶] Again, as I stated before, I'm not telling you that my client is innocent. I'm not saying that he is pure as the driven snow.... [¶] ... You have to use the standard beyond a reasonable doubt and hold the People to that standard, and I assert to you that they have not met their burden and that you need to find my client not guilty."

In her rebuttal closing argument, the prosecutor reiterated it was the People's burden to prove the charges beyond a reasonable doubt and asked the jury to look at the court's instructions and the evidence to do their job in deliberating.

10

The trial court also provided the jury with written copies of the instructions previously given. This packet of instructions also included CALCRIM No. 220 on the presumption of innocence and reasonable doubt, and CALCRIM No. 200 that the jury should follow the trial court's instructions over any conflicting statements by the attorneys.

*Analysis*

" ' "To preserve a claim of prosecutorial misconduct for appeal, a defendant must make a timely and specific objection and ask the trial court to admonish the jury to disregard the improper argument." ' " (*People v. Charles* (2015) 61 Cal.4th 308, 327, quoting *People v. Linton* (2013) 56 Cal.4th 1146, 1205.) Defendant's trial attorney failed to preserve the issues of prosecutorial misconduct by not objecting or requesting the jury be admonished as to any claimed instance of misconduct.

Recognizing the forfeiture problem, defendant argues his counsel was ineffective for failing to object. " 'A defendant whose counsel did not object at trial to alleged prosecutorial misconduct can argue on appeal that counsel's inaction violated the defendant's constitutional right to the effective assistance of counsel.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 674 (*Centeno*).) To establish ineffective assistance of counsel, defendant must show, by a preponderance of the evidence, that " '(1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant.' " (*People v. Johnson* (2015) 60 Cal.4th 966, 980.)

In evaluating an ineffective assistance of counsel claim on appeal, we presume, absent defendant's contrary showing, that " ' "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." ' [Citations.] When the record on direct appeal sheds no light on why counsel failed to act in the manner challenged, defendant must show that there was " 'no conceivable tactical purpose' " for counsel's act or omission. [Citations.]' '[T]he decision facing counsel in the midst of trial over whether to object to comments made by the prosecutor in closing argument is a highly tactical one' ... [citations], and 'a mere failure to object to evidence or argument seldom establishes counsel's incompetence.' [Citation.]" (*Centeno*, *supra*, 60 Cal.4th at p. 675.)

"A defendant is presumed innocent until proven guilty, and the government has the burden to prove guilt, beyond a reasonable doubt, as to each element of each charged offense. [Citations.]" (*People v. Booker* (2011) 51 Cal.4th 141, 185 (*Booker*).) That "presumption of innocence continues not only during the taking of the testimony, but during the deliberations of the jury, and until they reach a verdict." (*People v. Arlington* (1900) 131 Cal. 231, 235.)

It is misconduct to misinform the jury that the presumption of

11

innocence is "gone" prior to the jury's deliberations. (*People v. Cowan* (2017) 8 Cal.App.5th 1152, 1159 (*Cowan*).) Defendant relies on *People v. Dowdell* (2014) 227 Cal.App.4th 1388 (*Dowdell*) and *Cowan* to support his claim that the prosecutor's argument fell afoul of this rule. In *Dowdell*, the prosecutor twice argued the presumption of innocence had ended. The prosecutor initially argued the evidence was overwhelming, defendant had a fair trial, the jury had the evidence, and the presumption of innocence was over. The prosecutor later argued it was "fairly obvious" the defendant had committed the crimes he was accused of and again stated, " 'The presumption of innocence is over.' " (*Dowdell*, at p. 1407.) The court held this was prosecutorial misconduct as the statements, particularly the second one, did not focus on the strength of the prosecution's evidence, but suggested the presumption of innocence was over before jury deliberations had begun. (*Id.* at p. 1408.) In *Cowan*, the prosecutor told the jury that "the presumption of innocence is in place 'only when the charges are read' and that the 'presumption is gone' thereafter." (*Cowan*, *supra*, 8 Cal.App.5th at p. 1159.) The court in *Cowan* held that arguing the presumption of innocence ended even before evidence was presented at trial was an improper attempt by the prosecutor to lighten the People's burden of proof. (*Id.* at p. 1160.)

By contrast, a prosecutor does not misstate the law by arguing the evidence presented at trial has rebutted the presumption of innocence. (*Booker*, *supra*, 51 Cal.4th at p. 183; *People v. Panah* (2005) 35 Cal.4th 395, 463 (*Panah*); *People v. Goldberg* (1984) 161 Cal.App.3d 170, 189 (*Goldberg*).) In *Booker*, the prosecutor argued, "The defendant was presumed innocent until the contrary was shown. That presumption should have left many days ago. He doesn't stay presumed innocent." (*Booker*, at p. 183.) The prosecutor later argued, "the defendant starts out with the presumption of innocence. That doesn't stay. That isn't an automatic thing forever. That's why we have a trial. Once the evidence convinces you he is no longer innocent, that presumption vanishes." (*Id.* at p. 184.) The California Supreme Court held that these arguments did not impermissibly misstate the prosecutor's burden but the arguments merely suggested the jury should convict based on the evidence presented at trial. (*Id.* at p. 185.)

In *Goldberg*, the prosecutor argued, "And before this trial started, you were told there is a presumption of innocence, and that is true, but once the evidence is complete, once you've heard this case, once the case has been proven to you—and that's the stage we're at now—the case has been proved to you beyond any reasonable doubt. I mean, it's overwhelming. There is no more presumption of innocence. Defendant Goldberg has been proven guilty by the evidence." (*Goldberg*, *supra*, 161 Cal.App.3d at p. 189.) The Court of Appeal held these statements were merely a rhetorical restatement of the law that a defendant is presumed innocent until the contrary is proven. (*Ibid.*)

In *Panah* the prosecution argued the evidence had "stripped away" defendant's presumption of innocence. (*Panah*, *supra*, 35 Cal.4th at p. 463.) The California Supreme Court held this argument was proper

12

argument that in the prosecutor's opinion, the evidence proved defendant's guilt and overcame the presumption of innocence. (*Ibid.*)

In *People v. Romo* (2016) 248 Cal.App.4th 682 (*Romo*), the prosecutor argued, "As the evidence comes in—and the evidence has come in—and when you walk into that jury room and discuss the case—discuss the evidence in this case, once the evidence proved to you beyond a reasonable doubt that [defendant] committed the crime, there's no presumption of innocence. It's—it goes away as the evidence comes in and the evidence shows you that he's guilty. The presumption of innocence doesn't just stay there forever. [¶] The evidence proves to you that he's committed the crime and is guilty beyond a reasonable doubt." (*Id.* at pp. 690–691.) The court held, like in *Booker*, *supra*, 51 Cal.4th 141 and *Goldberg*, *supra* 161 Cal.App.3d 170, this argument simply argued the jury should convict based on the state of the evidence presented. (*Romo*, at p. 692.)

Defense counsel did not render constitutionally inadequate representation by failing to object to the prosecutor's remark on the presumption of innocence. "[T]he prosecutor has a wide-ranging right to discuss the case in closing argument. [S]he has the right to fully state [her] views as to what the evidence shows and to urge whatever conclusions [s]he deems proper." (*People v. Lewis* (1990) 50 Cal.3d 262, 283.) The prosecutor's argument here did reference the presumption of innocence attaching at the start of the trial. However, the argument also suggested the presumption's "cloak" of innocence had been removed by the prosecution's evidence, the victims' testimony, and law enforcement authorities' investigation. The prosecutor did not argue the presumption ended with the reading of the charges as occurred in *Cowan*, *supra*, 8 Cal.App.5th 1152; and she did not argue the presumption was completely over as happened in *Dowdell*, *supra*, 227 Cal.App.4th 1388. Considered in context, it was not unreasonable for defense counsel to interpret this argument as not all that different from those arguments found permissible in *Panah, Booker, Goldberg*, and *Romo*. That is, not as an incorrect statement of the law, but rather "merely a rhetorical statement about the weight of the evidence of guilt." (*Panah*, *supra*, 35 Cal.4th at p. 463.)

Defense counsel might not have objected because he reasonably concluded the prosecutor's statements regarding the presumption of innocence and burden of proof were not improper. Unlike *Centeno*, where our Supreme Court found defense counsel constitutionally ineffective for failing to object because "the problems with the prosecutor's comments were not difficult to discern" (*Centeno*, *supra*, 60 Cal.4th at p. 675), the purported impropriety of the prosecutor's statements is not so clear in this case.

Moreover, "[o]nce an otherwise properly-instructed jury is told that the presumption of innocence obtains until guilt is proven, it is obvious that the jury cannot find the defendant guilty until and unless they, as the fact-finding body, conclude guilt was proven beyond a reasonable doubt." (*Goldberg*, *supra*, 161 Cal.App.3d at pp. 189–190.) The prosecutor's alleged misstatement of law was brief and was countered by other correct statements of law at the beginning of

13

her closing argument, as well as her statements to the jury regarding the People's burden of proof. Defense counsel also argued the People had the burden of proof beyond a reasonable doubt. Before argument, the trial court thoroughly and accurately instructed the jury on the presumption of innocence and advised the jurors they must follow the law as the trial court explained it, even if an attorney's comments conflicted and the court gave the jury written instructions after argument.

Given the uncertainty that the prosecutor's argument crossed the line into an improper argument, and the numerous correct statements of the law provided to the jury by the prosecutor, defense counsel, and the trial court, it is not inconceivable or unreasonable that defense counsel made a tactical decision to withhold his objection, preferring instead to correct the impression the jurors may have drawn from the prosecutor's apparent misstatement in his own argument, rather than drawing attention to the point by objecting. We cannot agree with defendants either that there was "no conceivable tactical purpose" for counsel's silence during the prosecutor's closing argument. Accordingly, we conclude defense counsel's lack of objection to the prosecutor's arguments concerning the presumption of innocence and burden of proof fell well within the wide range of professional competence that is deemed constitutionally effective. (*People v. Ledesma* (2006) 39 Cal.4th 641, 746.)

(ECF No. 12-12 at 6-14.)

Although procedural issues are often addressed before the merits, they need not be. The Supreme Court in <u>Lambrix v. Singletary</u>, 520 U.S. 518 (1997) skipped over the procedural bar argument and proceeded to the merits. <u>Id.</u> at 525 ("Despite our puzzlement at the Court of Appeals' failure to resolve this case on the basis of procedural bar, we hesitate to resolve it on that basis ourselves."); <u>see also</u> <u>Franklin v. Johnson</u>, 290 F.3d 1223, 1232 (9th Cir. 2002) (stating that courts may "reach the merits of habeas petitions if they are, on their face and without regard to any facts that could be developed below, clearly not meritorious despite an asserted procedural bar."). "Procedural bar issues are not infrequently more complex than the merits issues" and "it may well make sense in some instances to proceed to the merits if the result will be the same." <u>Franklin</u>, 290 F.3d at 1232; <u>see, e.g.</u>, <u>Dean v. Schriro</u>, 371 F. App'x 751 (9th Cir. 2010). Because this claim can be resolved on the merits, this Court declines to decide whether a procedural bar precludes petitioner from obtaining habeas relief.

In reviewing the prosecutor's alleged misconduct, "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a

1    denial of due process.'"  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (Donnelly v.

2    DeChristoforo, 416 U.S. 637, 643 (1974)); see also Parker v. Matthews, 567 U.S. 37, 45 (2012)

3    (per curiam).  It "is not enough that the prosecutors' remarks were undesirable or even universally

4    condemned."  Darden, 477 U.S. at 181 (citation omitted).  "[A] court should not lightly infer that

5    a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury,

6    sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging

7    interpretations."  Donnelly, 416 U.S. at 647.  In making its determination, the court should

8    consider the prosecutor's comments in the context of the entire trial record.  Hein v. Sullivan, 601

9    F.3d 897, 912-13 (9th Cir. 2010).  "[T]he *Darden* standard is a very general one," and courts,

10   therefore, have "'more leeway . . . in reaching outcomes in case-by-case determinations.'"

11   Parker, 567 U.S. at 48 (quoting Alvarado, 541 U.S. at 664).  Even if there was prosecutorial

12   misconduct, habeas relief is only warranted if petitioner can establish that the error "'had

13   substantial and injurious effect or influence in determining the jury's verdict.'"  Brecht v.

14   Abrahamson, 507 U.S. 619, 637 (1993) (citation omitted); see also Parle v. Runnels, 387 F.3d

15   1030, 1044 (9th Cir. 2004).

16          Here, the prosecutor made a statement during closing argument, which petitioner claims

17   constituted prosecutorial misconduct in violation of his right to due process.  Specifically, the

18   prosecutor said

19                 The presumption of innocence is the cornerstone of our criminal
                   justice system.  It applies to every criminal case in the entire United
20                 States and it is an important one.  But what I will remind you, now
                   that we're getting at the end of this case, is that that presumption of
21                 innocence doesn't only protect innocent people.  Guilty people are
                   presumed, at the start of the case, innocent, too.  We have removed
22                 that cloak.  You get to see and determine for yourselves what lies
                   beneath that.  He demanded a trial, like every person in the United
23                 States does, and we gave him that.   [The victims], and law
                   enforcement did their jobs.  Now I'm asking you to do yours.
24

25   (ECF No. 12-5 at 307.)

26          The presumption of innocence is "axiomatic and elementary," lying at the foundation of

27   criminal law.  Coffin v. United States, 156 U.S. 432, 453 (1895); see also Estelle v. Williams, 425

28   U.S. 501, 503 (1976) ("The presumption of innocence, although not articulated in the

Constitution, is a basic component of a fair trial under our system of criminal justice.")  "Once a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears."  Herrera v. Collins, 506 U.S. 390, 399 (1993); see also Delo v. Lashley, 507 U.S. 272, 278 (1993); Ford v. Peery, 999 F.3d 1214, 1224-25 (9th Cir. 2021).

Here, the state court's rejection of petitioner's prosecutorial misconduct claim was not objectively unreasonable.  After reviewing the record, this Court finds that the prosecutor's comments did not make the trial so unfair as to constitute a denial of due process.  The state court reasonably concluded that, although the prosecutor referenced the presumption of innocence attaching at the start of trial, the prosecutor also "suggested the presumption's 'cloak' of innocence had been removed by the prosecution's evidence, the victim's testimony, and the law enforcement authorities' investigation."  (ECF No. 12-12 at 12-13.)   In doing, the prosecutor was referring to the weight of the evidence, emphasizing that it was up to the jury "to see and determine for yourselves what lies beneath that [presumption of innocence cloak]."  (ECF No. 12-5 at 307.)

Even if the prosecutor briefly misstated the law, the improper statements did not have a substantial and injurious effect on the jury's verdict.  During closing arguments, both the prosecutor and defense attorney correctly stated that petitioner is presumed innocent until he is proven guilty beyond a reasonable doubt.  (ECF No. 12-5 at 289; see also id. at 303; ECF No. 12-6 at 13, 21.)  The trial court also instructed the jury that "[i]f you believe the attorney's comments on the law conflict with my instructions, you must follow my instructions."  (ECF No. 12-1 at 264 (CALCRIM No. 200)); Weeks v. Angelone, 528 U.S. 225, 234 (2000) (courts presume that juries follow the court's instructions).  Additionally, the court adequately instructed the jury on CALCRIM No. 220.  (Id. at 267 ("A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt…Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty."))

Lastly, petitioner contends that his trial counsel was ineffective for failing to object to the

prosecutor's misconduct.  To state an ineffective assistance of counsel claim, a defendant must show that (1) his counsel's performance was deficient, falling below an objective standard of reasonableness, and (2) his counsel's deficient performance prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  Richter, 562 U.S. at 105 (internal citations omitted); see also Landrigan, 550 U.S. at 473.  When § 2254(d) applies, the "question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  Richter, 562 U.S. at 105.  Because this court concludes that the prosecutor did not commit an error, the state court reasonably concluded that defense counsel was not ineffective for failing to object to the statements.

The state court's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court authority, and this Court recommends denying relief on this claim.

B. Denial of Severance (Claim Two)

Petitioner claims that the trial court violated his right to due process by denying his motion to sever counts 12 and 13 from the remaining counts.  (ECF No. 1 at 52.)  In response, respondent argues that the trial court's denial of motion to sever does not implicate a clearly established right, and petitioner cannot demonstrate prejudice.  (ECF No. 11 at 29-31.)

Petitioner raised this claim on direct appeal, and the state appellate court denied his claim.

***Severance***

> Defendant contends the trial court prejudicially erred by denying his motion to sever the counts related to D. (counts 12 and 13) from the counts related to Ke. and K. He argues the evidence in the cases was not cross-admissible; the offenses against D. were remote and dissimilar from the charges against the sisters; the charges as to D. were likely to inflame the jury against defendant, as they involved forcible sexual intercourse with defendant's 12-year-old niece; and two weak cases were joined with each other, creating a risk the jury would improperly aggregate the evidence against defendant.

> "When, as here, the statutory requirements for joinder are met, a defendant must make a clear showing of prejudice to establish that the trial court abused its discretion in denying the defendant's severance motion. [Citations.] In determining whether there was an abuse of discretion, we examine the record before the trial court at the time of its ruling. [Citation.] The factors to be considered are these: (1) the cross-admissibility of the evidence in separate trials;

(2) whether some of the charges are likely to unusually inflame the jury against the defendant; (3) whether a weak case has been joined with a strong case or another weak case so that the total evidence may alter the outcome of some or all of the charges; and (4) whether one of the charges is a capital offense, or the joinder of the charges converts the matter into a capital case. [Citation.]" (*People v. Mendoza* (2000) 24 Cal.4th 130, 160–161.) " 'The state's interest in joinder gives the court broader discretion in ruling on a motion for severance than it has in ruling on admissibility of evidence.' [Citations.]" (*Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1221.) "The burden is on the defendant to establish that the countervailing considerations of efficiency and judicial economy are outweighed by a substantial danger of undue prejudice. [Citation.]" (*People v. Ybarra* (2016) 245 Cal.App.4th 1420, 1433.)

"If the evidence underlying the joined charges would have been cross-admissible at hypothetical separate trials, 'that factor alone is normally sufficient to dispel any suggestion of prejudice and to justify a trial court's refusal to sever properly joined charges.' [Citations.]" (*People v. Merriman* (2014) 60 Cal.4th 1, 38 (*Merriman*).) If the offenses are cross-admissible, then we may affirm a court's ruling denying a severance motion without considering the remaining factors. (*Id.* at pp. 42–43.)

Here, the evidence underlying the charges related to D. were cross-admissible in the case related to Ke. and K. under Evidence Code section 1108.[2] The charges related to Ke. and K. were cross-admissible in the case related to D. because of the independent corroboration requirement of Penal Code section 803, subdivision (f).

[N.2 Undesignated statutory references are to the Evidence Code.]

### *Section 1108*

Generally, evidence of prior criminal acts is inadmissible to prove the defendant's conduct on a specific occasion. (§ 1101, subd. (a); see also *People v. Cole* (2004) 33 Cal.4th 1158, 1194.) In a criminal action where the defendant is charged with a sexual offense, however, evidence of the defendant's commission of other sexual offenses is admissible to prove the defendant's propensity to commit crimes of a sexual nature if such evidence is not inadmissible under section 352. (§ 1108, subd. (a); *People v. Christensen* (2014) 229 Cal.App.4th 781, 795–796.)

Evidence of the defendant's commission of other sexual offenses should be excluded under section 352 "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352.) In making this section 352 assessment relative to other sexual offenses, the trial court must weigh " 'such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the

charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense. [Citations.]' [Citation.]" (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 823–824.) With these principles in mind, we conclude that evidence of defendant's commission of sexual assaults against D. would have been cross-admissible in separate trials of the charges for sexually molesting Ke. and K.

Defendant contends the offenses against D. were too dissimilar to the charged crimes against Ke. and K. to be admissible. " ' "[T]he charged and uncharged crimes need not be sufficiently similar that evidence of the latter would be admissible under ... section 1101, otherwise ... section 1108 would serve no purpose. It is enough the charged and uncharged offenses are sex offenses as defined in section 1108." ' [Citation.]" (*People v. Cordova* (2015) 62 Cal.4th 104, 133.) Moreover, there were significant similarities between the offenses. All of the girls were under 13 years of age when defendant first sexually molested them. All of the incidents involved defendant molesting a child who was defenseless and particularly vulnerable to his conduct because he was the only adult with them. As a result of his established relationships of trust and familiarity with the victims' family members, he had access to each of the victims in the privacy of a family member's home. At times he had access to the victims as a result of babysitting arrangements. He introduced the subject of sex and sexual conduct with the victims. He used sexual paraphernalia or pornography and vibrators with the victims. And the assaults and molestations occurred over the course of years. "These similarities permitted the inference that defendant had a propensity to commit such sex offenses, including the charged crimes. [Citation.]" (*Id.* at pp. 133-134.) " 'This circumstance brings the evidence precisely within the primary purpose behind ... section 1108.' [Citation.]" (*Ibid.*)

Nor are we persuaded by defendant's claim that the prior sexual offenses against D. were too remote. " 'No specific time limits have been established for determining when an uncharged offense is so remote as to be inadmissible.' [Citation.] ' "[S]ubstantial similarities between the prior and the charged offenses balance out the remoteness of the prior offenses. [Citation.]" [Citation.]' " (*People v. Robertson* (2012) 208 Cal.App.4th 965, 992.) "Numerous cases have upheld admission pursuant to ... section 1108 of prior sexual crimes that occurred decades before the current offenses." (*Id.* at p. 992 [no error in admitting 34–year–old prior sexual assault conviction]; see also *People v. Pierce* (2002) 104 Cal.App.4th 893, 900 [sex crime committed 23 years before current crime was admissible]; *People v. Branch* (2001) 91 Cal.App.4th 274, 284 (*Branch*) [upholding admission of a sex crime committed 30 years before charged offense]; *People v. Waples* (2000) 79 Cal.App.4th 1389, 1395 ["20 years is not too remote" under section 1108].) "Defendant does not point to any evidence that his character changed over the relevant time period or offer any reason that such a change might have

occurred." (*People v. Cordova*, *supra*, 62 Cal.4th at p. 133.)

We also reject defendant's claim the evidence was unduly prejudicial under section 352. The evidence was harmful to defendant, but it was not prejudicial in the sense it would confuse the jury or cause it to decide the case on an improper basis. (See *People v. Walker* (2006) 139 Cal.App.4th 782, 806.) Although the incidents involving D. were more aggravated than those involving Ke. and K., the incidents involving Ke. and K. were not insignificant, and involved repeated molestations that continued over the course of years. It is not likely that cross-admitting the evidence would have confused, misled, or distracted the jury. The evidence relating to both sets of charges was straightforward. Each of the girls was able to clearly, simply, and succinctly describe the nature of defendant's assaults. The salient facts establishing the assault in each of those incidents were presented by a single witness.

### *Corroboration under Penal Code Section 803*

In addition, the evidence related to Ke. and K. was admissible in the case related to D. as independent corroborating evidence. The offenses against D. were committed beyond the period of the statute of limitations. However, Penal Code section 803, subdivision (f), permits the charging of certain sexual offenses after the expiration of the statute of limitations if specific conditions are pled and proven, including if "there is independent evidence that clearly and convincingly corroborates the victim's allegation." (Pen. Code, § 803, subd. (f)(2)(C).) Here, the prosecution alleged in the information that this independent corroboration requirement was met by the acts committed against Ke. and K., as well as defendant's prior conviction for sexual abuse against D.

Evidence of uncharged acts against other victims is admissible to corroborate a victim's allegation of sexual abuse under Penal Code section 803, subdivision (f). (*People v. Yovanov* (1999) 69 Cal.App.4th 392; *People v. Ruiloba* (2005) 131 Cal.App.4th 674, 682.) This corroboration may be established "solely with evidence of a similar offense committed against an uncharged victim." (*People v. Mabini* (2001) 92 Cal.App.4th 654, 659.) As delineated, *ante*, the offenses as against Ke. and K. were sufficiently similar to those committed against D. to make them admissible to establish the independent corroboration requirement of Penal Code section 803, subdivision (f). All of these crimes were sex offenses committed against young girls of similar age at one of their relative's homes. Accordingly, the evidence of acts against Ke. and K. was cross-admissible to establish the charges committed against D.

Evidence of the sexual assaults from the two groups of charges would have been cross-admissible in separate trials. Because the evidence underlying the charges related to D. was cross-admissible in the case related to Ke. and K. under section 1108 and the charges related to Ke. and K. were cross-admissible in the case related to D. under the corroboration requirement of Penal Code section 803, subdivision (f), the trial court did not abuse its discretion in denying defendant's motion to sever. (*Merriman*, *supra*, 60 Cal.4th at pp. 42-43.)

20

1    (ECF No. 12-12 at 14-19.)

2          There is no clearly established federal law stating that joinder or consolidation of charges

3    may violate the Constitution.  To determine clearly established federal law, this Court must look

4    to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the

5    relevant state-court decision."  Williams, 529 U.S. at 412.  In United States v. Lane, 474 U.S.

6    438, 446 n.8 (1986), the Supreme Court stated in a footnote that "[i]mproper joinder does not, in

7    itself, violate the Constitution.  Rather, misjoinder would rise to the level of a constitutional

8    violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right

9    to a fair trial."  The Ninth Circuit has held, however, that the footnote in Lane was dicta and does

10   not provide a basis for granting habeas relief.  See Collins v. Runnels, 603 F.3d 1127, 1132 (9th

11   Cir. 2010) ("The footnote upon which [petitioner] relies did not set forth the governing legal

12   principle in Lane.  It was merely a comment."); Young v. Pliler, 273 F. App'x 670, 672 n.1 (9th

13   Cir. 2008).  Because there is no clearly established federal law in this instance, this Court cannot

14   grant habeas relief on this claim.  See Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2009) (absent

15   a Supreme Court decision squarely addressing the issue, the federal habeas court must defer to the

16   state court's decision).

17         Even if this Court assumes that the Lane footnote could be considered clearly established

18   federal law, no constitutional violation occurred because any prejudice was not enough to deny

19   petitioner his right to a fair trial.  Lane, 474 U.S. at 446, n.8.  As noted by the California Court of

20   Appeal, the evidence underlying the charges related to D. was cross-admissible in the cases

21   related to Ke. and K under section 1108 and Penal Code section 803.  After reviewing the record,

22   this Court also agrees with the state appellate court that the evidence relating to D was not too

23   dissimilar or remote from or a weaker case than the evidence relating to Ke. and K, as petitioner

24   contends.  The trial court mitigated the risk that the jury would aggregate all the evidence by

25   separately instructing the jury on each count.  (ECF No. 12-1 at 280-83, 285-86, 288-89.)

26   Petitioner has failed to show that the denial of his motion to sever the trial had a substantial or

27   injurious effect on the jury's verdict.

28         For the above reasons, the state court's decision was not contrary to, or an unreasonable

21

1    application of, clearly established Supreme Court authority, and this Court recommends denying

2    habeas relief on claim two.

3        C. Admission of Prior Sexual Offenses (Claim Three)

4        Next, petitioner claims that the trial court prejudicially erred by allowing the prosecution

5    to present evidence of uncharged sexual offenses he committed in New York in violation of his

6    due process rights.  (ECF No. 1 at 60; see also id. at 63 ("Even though the evidence of

7    [petitioner's] prior offenses committed against [D] in New York met the threshold requirements

8    for admissibility under Evidence Code section 1108, this evidence was so unduly prejudicial and

9    had such a severe risk of confusing the issues and misleading the jury that it was error to allow

10   the prosecution to present this evidence.")  In response, respondent argues that there is no clearly

11   established right barring the admission of propensity evidence, and that petitioner cannot

12   demonstrate prejudice.  (ECF No. 11 at 31.)

13       In the last reasoned state court opinion, the state appellate court rejected petitioner's

14   claim.

15                    ***Admission of Uncharged New York Offenses under Section 1108***

16       Defendant contends the trial court prejudicially erred in allowing
         admission of his sexual offenses against D. committed in New York,
17       including his 1994 conviction for sexual abuse of D., and violated his
         federal constitutional rights by admitting evidence of uncharged
18       offenses. He argues although the evidence met the threshold
         admissibility requirements under section 1108, the evidence was
19       unduly prejudicial and thus, had a severe risk of confusing the issues
         and misleading the jury. He claims the New York offenses were
20       much more inflammatory than the other offenses, given that they
         involved sexual intercourse with a biological relative, were remote
21       in time, and were dissimilar to the charged offenses.

22                                          ***Background***

23       The prosecution moved in limine to admit defendant's 1994 prior
         conviction from New York, as well as D.'s testimony that: (1)
24       defendant had sex with her in June of 1993, the act that led to the
         New York conviction; (2) defendant had sex when she was 13 or 14
25       years old, when they were in New York four wheeling near her home;
         and (3) defendant would have sex with her when she would stay at
26       his home. Defense counsel objected to this evidence being admitted.

27       Following argument, the trial court ruled: "All right. So the Court
         feels – I am going to permit the prosecution to introduce evidence
28       from [D.] of what happened in 1993 and also what happened in 1990.

                                               22

I think it's relevant under 1108 for propensity evidence. I think the fact that [D.] was approximately the same age as [Ke.] and [K.], I think is similarity. So I believe under 352 it has relevance for propensity. And so accordingly, I'm going to – having weighed and considered under 352, I am going to permit the People to have her testify.

"I further am going to permit the People to introduce [the certified conviction] as evidence. However, I am going to ask the People, unless it's relevant for some other purpose, to redact all the charges he was indicted for. I understand the People are worried that the jurors may feel that has some bearing on her credibility, but the fact is that the relevance of this [conviction] is that he was convicted of that particular offense."

### *Analysis*

Much of the analysis and legal standards for admitting evidence under section 1108 are detailed *ante*. "Like any ruling under section 352, the trial court's ruling admitting evidence under section 1108 is subject to review for abuse of discretion." (*People v. Story* (2009) 45 Cal.4th 1282, 1295.)

Under section 1108, "prior sexual offense is indisputably relevant in a prosecution for another sexual offense." (*Branch*, *supra*, 91 Cal.App.4th at p. 282.) The probative value, " 'in a given case will depend on innumerable considerations, including the similarity of the prior acts to the acts charged [citation], the closeness in time of the prior acts to the charged acts [citation], the frequency of the prior acts, the presence or lack of intervening events [citation], and the need for evidence beyond the testimony of the defendant and alleged victim.' [Citation.]" (*People v. Soto* (1998) 64 Cal.App.4th 966, 989–990.)

The evidence of the uncharged offenses was highly probative in that it tended to show defendant is predisposed to engage in the charged conduct and had a sexual attraction to young girls. (*People v. Holford* (2012) 203 Cal.App.4th 155, 185-186.)

The uncharged acts in New York and the conviction involved repeated incidents of defendant having sex with D. when she was between the ages of 12 and 16. The charged offenses here were forcible rape of D. when she was 12 years old, and numerous acts of lewd and lascivious conduct against Ke. and K., when they were between 8 and 13 years old. That lewd and lascivious conduct included grabbing their breasts, touching their genitals with his fingers, using a vibrator with each of them, and positioning K. with her vagina in front of the pool jet stream. Thus, in the charged and uncharged offenses, the victims were all young females, in approximately the same age range when defendant molested them. In the charged and uncharged offenses, defendant took advantage of his relationships with family members of the victims to gain access to them when no other adult was present.

The charged offense against D. occurred in 1990 and the uncharged

23

offenses occurred in between then and 1993. As to D., the uncharged offenses are not remote in time to the charged offenses. And, although the charged offenses against Ke. and K. occurred many years after the uncharged offenses that occurred between approximately 2005 and 2009, as discussed *ante*, 25 years between sexual offenses is not too remote.

Nor are the uncharged offenses unduly prejudicial. The charged and uncharged offenses against D. all involved defendant having sexual intercourse with D. The uncharged rapes in New York in 1990 were not more inflammatory than the charged rape. In addition, the fact defendant was convicted of forcibly sexually abusing D. in New York reduced its prejudicial effect, as it eliminated the risk the jury would seek to punish defendant for that crime in this proceeding, the jury could confuse the issues, or the matter would require a "mini-trial." (*People v. Loy* (2011) 52 Cal.4th 46, 61.) And, as above, the evidence related to the uncharged offenses was straightforward and presented with the testimony of D. and the certified copy of conviction. The similarities between the uncharged and charged offenses balances out the remoteness. (*Branch*, *supra*, 91 Cal.App.4th at p. 285.)

Defendant "has failed to carry his burden of rebutting the strong presumption of admissibility of the sexual assault crimes evidence under ... section 1108." (*Merriman*, *supra*, 60 Cal.4th at p. 42.) The admission of evidence of the uncharged offenses against D. and the conviction for forcible sexual abuse against D. was not an abuse of discretion. (*People v. Holford*, *supra*, 203 Cal.App.4th at p. 186.) Because the probative value of this evidence was not substantially outweighed by the danger of undue prejudice, or any other statutory counterweight contained in section 352, we also conclude admission of the evidence did not violate defendant's federal constitutional rights. (*Holford*, at p. 180; *Branch*, *supra*, 91 Cal.App.4th at pp. 283-284.)

(ECF No. 12-12 at 19-23.)

Petitioner argues that the state court erred in admitting evidence of his prior charged and uncharged sexual assault crimes against D. in New York under Evidence Code sections 1108 and 352. This issue is a matter of state law and is not cognizable on habeas review. See Estelle, 502 U.S. at 67-68; Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009); see also Horton v. Mayle, 408 F.3d 570, 576 (9th Cir. 2005). Errors of state law do not warrant federal habeas relief. See Estelle, 502 U.S. at 67-68; Johnson v. Sublett, 63 F.3d 926, 930 (9th Cir. 1995). The erroneous admission of evidence is grounds for federal habeas corpus relief only if it made the state proceedings so fundamentally unfair as to violate due process. See Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991).

24

1    Assuming the claim is cognizable, "[u]nder AEDPA, even clearly erroneous admissions of

2    evidence that render a trial fundamentally unfair may not permit the grant of federal habeas

3    corpus relief if not forbidden by 'clearly established Federal law,' as laid out by the Supreme

4    Court." Holley, 568 F.3d at 1101; see also Walden v. Shinn, 990 F.3d 1183, 1204 (9th Cir.

5    2021); Nava v. Diaz, 816 F. App'x 192, 193 (9th Cir. 2020).  Because the Supreme Court has not

6    clearly decided whether the admission of propensity evidence constitutes a due process violation

7    sufficient to warrant habeas relief, this Court cannot conclude that the state court's ruling was

8    contrary to, or an unreasonable application of, clearly established federal law.  See Wright v. Van

9    Patten, 552 U.S. 120, 126 (2008) (per curiam); Jennings v. Runnels, 493 F. App'x 903, 906 (9th

10   Cir. 2012); Alberni v. McDaniel, 458 F.3d 860, 866 (9th Cir. 2006); Bradford v. Paramo, No.

11   2:17-cv-05756 JAK JC, 2020 WL 7633915, at *6-7 (C.D. Cal. Nov. 12, 2020) (citing cases),

12   adopting report and recommendation, 2020 WL 7631441 (C.D. Cal. Dec. 22, 2020).

13   Lastly, petitioner cannot demonstrate that admission of this evidence had a "substantial

14   and injurious effect" on the verdict.  Brecht, 507 U.S. at 637.  Petitioner's prior conviction and

15   other acts of forcible sex with D in New York are similar to the charged crime for forcible sex of

16   D in California.  (Compare ECF No. 12-4 at 181-93 with id. at 200-09.)  To the extent petitioner

17   is concerned that his New York acts allowed the jury to infer propensity to commit the charged

18   crime, the trial court instructed the jury on how it could consider this evidence.  (ECF No. 12-1 at

19   285-86.); Weeks, 528 U.S. at 234 (a jury is presumed to follow its instructions).  Petitioner has

20   not provided any reason for this Court to reject that presumption here.

21   For the reasons stated above, the state court's decision was not contrary to, or an

22   unreasonable application of, clearly established Supreme Court authority.  Accordingly, this

23   Court recommends denying habeas relief on this claim.

24   D. Insufficient Evidence (Claim Five)

25   Petitioner claims there is insufficient evidence to support his conviction for count one.

26   (ECF No. 1 at 72-78.)  Although the victim testified that he swam up to her under water, moved

27   her bathing suit with his finger, and looked at her vagina, petitioner asserts that this is insufficient

28   to show that he made physical contact with her body.  (Id. at 72.)  In response, respondent argues

25

it was reasonable for the state court to reject the claim that insufficient evidence supported

petitioner's conviction on count one.  (ECF No. 11 at 34.)

In the last reasoned opinion, the state appellate court denied petitioner's claim on direct

review.

### Sufficiency of the Evidence

Defendant contends there is insufficient evidence to support the conviction for lewd and lascivious conduct based on him moving the bottom of K.'s bathing suit to look at her vagina.[3] He claims there is not sufficient evidence he "actually made contact with K.'s body during this incident," therefore the conviction must be reversed.

[N.3 Two incidents were charged in the pool relating to K., moving her bathing suit and placing her against the water jet. The parties agree the bathing suit incident is most likely count one. Irrespective of which count is challenged, the substantive issue on appeal, and corresponding analysis, remain the same.]

" 'To determine the sufficiency of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.]" (*People v. Wallace* (2008) 44 Cal.4th 1032, 1077.) " 'Circumstantial evidence may be sufficient to connect a defendant with the crime and to prove his [or her] guilt beyond a reasonable doubt.' [Citation.]" (*People v. Bean* (1988) 46 Cal.3d 919, 932–933.) "[U]nless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction. [Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

Penal Code section 288(a) has two elements: (a) the touching of an underage child's body (b) with a sexual intent. (*People v. Martinez* (1995) 11 Cal.4th 434, 444.) "However, the form, manner, or nature of the offending act is not otherwise restricted. Conviction under the statute has never depended upon contact with the bare skin or 'private parts' of the defendant or the victim." (*Ibid.*) That is, "a lewd or lascivious act can occur through the victim's clothing and can involve 'any part' of the victim's body." (*Ibid.*) Any touching of an underage child committed for purpose of sexual arousal is "lewd or lascivious," and satisfies the statutory requirement. (*Id.* at pp. 444-446, 452.)

K. testified that while she was swimming in the pool, wearing a two-piece bathing suit, defendant swam under water and moved her bathing suit bottom to look at her vagina. She testified, "I could feel him hook his finger under the – under the band of my bathing suit and move it over."

It was reasonable for the jury to infer from K.'s testimony that

26

defendant touched her. Bathing suits fit close to the skin, with elasticized bands to keep them in place. When wet, as this one would have been because K. was in the pool at the time, they cling to the body. K. felt defendant hook his finger under the band of the suit and move it to expose her vagina to him. Defendant testified he had large hands, too large to fit under K.'s T-shirt. It was reasonable for the jury to infer that defendant, particularly with his large hands, could not have moved K.'s bathing suit bottom without simultaneously touching her. K.'s testimony and the reasonable inferences therefrom are sufficient evidence to support the conviction.

(ECF No. 12-12 at 23-24.)

A petitioner is entitled to habeas corpus relief on a sufficiency of the evidence claim "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979); see also Ngo v. Giurbino, 651 F.3d 1112, 1115 (9th Cir. 2011). This inquiry involves two steps. First, the federal court must review the evidence in the light most favorable to the prosecution. Jackson, 443 U.S. at 319. If there are conflicting factual inferences, the federal court must presume the jury resolved the conflicts in favor of the prosecution. Id. at 326 ("[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."); McDaniel v. Brown, 558 U.S. 120, 133 (2010) (per curiam). Second, the federal court will "determine whether the evidence at trial, including any evidence of innocence, could allow *any* rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." United States v. Nevils, 598 F.3d 1158, 1165 (9th Cir. 2010) (en banc).

Although this Court's review is grounded in due process under the Fourteenth Amendment, the Jackson standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n.16; Juan H. v. Allen, 408 F.3d 1262, 1275-76 (9th Cir. 2005). This Court will look to state law to establish the elements of the offense and then turn to the federal question of whether the state court was objectively unreasonable in concluding that sufficient evidence supported that conviction. See Johnson v. Montgomery, 899 F.3d 1052, 1056 (9th Cir. 2018).

27

1      "After AEDPA, we apply the standards of *Jackson* with an additional layer of deference."

2   Juan H., 408 F.3d at 1274; <u>see</u> <u>Coleman v. Johnson</u>, 566 U.S. 650, 651 (2012) (per curiam).  On

3   direct appeal at the state level, "it is the responsibility of the jury—not the court—to decide what

4   conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the

5   jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have

6   agreed with the jury." <u>Cavazos v. Smith</u>, 565 U.S. 1, 2 (2011) (per curiam).  On habeas review,

7   "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence

8   challenge simply because the federal court disagrees with the state court.  The federal court

9   instead may do so only if the state court decision was 'objectively unreasonable.'" <u>Id.</u> (quoting

10  <u>Renico v. Lett</u>, 559 U.S. 766, 773 (2010)).

11      In count one, petitioner was convicted under California Penal Code section 288, which is

12  violated by "'any touching' of an underage child accomplished with the intent of arousing the

13  sexual desires of either the perpetrator or the child." <u>People v. Martinez</u>, 11 Cal. 4th 434, 452

14  (1995).  "[T]he form, manner, or nature of the offending act is not otherwise restricted.

15  Conviction under the statute has never depended upon contact with bare skin or 'private parts' of

16  the defendant or the victim." <u>Id.</u> at 444.

17      The state court's finding that there was sufficient evidence to support the conviction was

18  not objectively unreasonable.  The victim testified that while swimming in a pool with petitioner,

19  he wore goggles, told her to come over, and then went under water and "moved my bathing suit

20  bottoms to look at my vagina in the water." (ECF No. 12-5 at 12; <u>see also</u> <u>id.</u> at 43 ("I could feel

21  what he was doing.")) She "could feel him hook his finger under the … band of my bathing suit

22  and move it over." (<u>Id.</u> at 13.)  Petitioner was about 18 inches away from her when this occurred.

23  (<u>Id.</u> at 14.)  As the state court noted, bathing suits cling to wet skin, and the victim felt petitioner

24  hook his finger under the band of her bathing suit to look at her private parts.  Based on this

25  evidence, a rationale trier of fact could infer that petitioner touched the victim.  This reasonable

26  inference is bolstered by her testimony that he touched her on other occasions.  (<u>See, e.g.</u>, <u>id.</u> at

27  46 (his hand would linger on her bottom when he threw her into the pool); <u>id.</u> at 46-48 (when she

28  was playing video games, he came up behind her, rubbed her arms and back, and looked down

1    her shirt); id. at 48 (while playing hide and seek, petitioner toucher her back with a massager).)

2    Petitioner's claim that it is also possible that he did not touch her when he moved her bathing suit

3    runs afoul with the Jackson standard, which requires this Court to review the evidence in the light

4    most favorable to the prosecution.  Jackson, 443 U.S. at 319.

5        For all of the above reasons, the state court's decision was not contrary to, or an

6    unreasonable application of, clearly established Supreme Court authority.  Therefore, this Court

7    recommends denying habeas relief on this claim.

8        E. New Trial Motion (Claims Six and Eight)

9        In claim six, petitioner argues that the trial court erred when it did not hear and rule on

10   defendant's motion for a new trial based on the errors in the verdict forms while he was

11   represented by counsel.  (ECF No. 1 at 79-82.)  In claim eight, he claims that his defense counsel

12   was ineffective for failing to file a new trial motion.  (Id. at 87-88.)  Respondent contends that

13   petitioner's claim six fails because he had no federal constitutional right to make a new trial

14   motion or to file his own motion when represented by counsel.  (ECF No. 11 at 37-40.)  As to his

15   ineffective assistance of counsel claim, respondent argues that the state court reasonably rejected

16   the claim because defense counsel had strategic reasons for not raising the motion, and petitioner

17   was not prejudiced by defense counsel's actions.  (Id.)

18       Petitioner raised these claims in a state habeas petition in the Placer County Superior

19   Court.  (ECF No. 12-15.)  The superior court considered his claims and rejected them.  (ECF No.

20   12-17.)

21
22
23
24
25
26
> On September 9, 2020, Mr. Morse filed a habeas petition alleging in part that the trial court denied his due process rights by failing to hear his motion for a new trial.  As he describes in his petition, this issue was extensively discussed on the record at the time of sentencing. (Reporter's Transcript of Sentencing, dated December 4, 2017, pp. 5-11.)  Petitioner also alleges ineffective assistance of his trial counsel (IAC) for his failure to file a new trial motion.  As stated on the record at sentencing, the petitioner's attorney did not believe a motion for a new trial warranted, and also believed he had tactical reasons for not advancing the motion so that he could argue for concurrent sentencing.[1]

27
> [N.1 The court in fact ran Counts 8-10 concurrent.]

28
> With respect to the grounds for relief related to the failure to bring a

29

1
2
3

> new trial motion, the court denies the petition for habeas relief
> because he failed to raise these issues on appeal.  Generally, habeas
> relief is not appropriate for issues raised and rejected on appeal, or
> those that could have been raised by were not. (*In re Waltreus* (1965)
> 62 Cal.2d 218; *In re Dixon* (1953) 41 Cal.2d 756.)

4 (Id.) He also raised this claim in habeas petitions before the California Court of Appeals and

5 California Supreme Court, but both courts denied the claims.  (ECF Nos. 12-18 to 21-21.)

6 Because these claims can be resolved on the merits, this Court declines to reach the procedural

7 issues.

8                 i.     Motion for New Trial (Claim Six)

9         Petitioner argues that the trial judge's refusal to consider his pro se motion for a new trial

10 violated his due process rights.  This claim fails for several reasons.  First, a motion for a new

11 trial in a criminal case is a statutory right in California.  See People v. Dillard, 168 Cal. App. 2d

12 158, 167 (1959) ("It is well established in this state that a motion for new trial in a criminal case

13 is a statutory right and may be made only on the grounds enumerated in section 1181 of the Penal

14 Code, exclusive of all others.")  Such alleged errors of state law are not cognizable on federal

15 habeas review.  See Borges v. Warden, 656 F. App'x 303, 304 (9th Cir. 2016).  Merely claiming

16 that this state law error amounts to a due process violation cannot transform a state claim into a

17 federal one.  Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996).  Second, although due

18 process requires a meaningful opportunity to be heard, see Mathews v. Eldridge, 424 U.S. 319,

19 333 (1976), the Supreme Court has not recognized a right to be heard on a new trial motion.  See

20 Stillman v. Lamarque, 178 F. App'x. 647, 650 (9th Cir. 2006) (citing cases).  The state court's

21 finding that the trial court did not err in refusing to consider the motion was, therefore, neither

22 contrary to, nor an unreasonable application of, clearly established federal law.

23         Third, petitioner was represented by counsel and does not have a constitutional right to

24 present arguments that his counsel decided not to pursue.  See Jones v. Barnes, 463 U.S. 745, 751

25 (1983) (Defendant does not have "a constitutional right to compel appointed counsel to press

26 nonfrivolous points requested by the client, if counsel, as a matter of professional judgment,

27 decides not to present those points.")  Although the choice to be represented by counsel is "not all

28

1    or nothing," trial management— including arguments to pursue, evidentiary objections, and

2    agreements regarding admissibility of evidence—is the province of counsel.  McCoy v. Louisiana,

3    138 S. Ct. 1500, 1508 (2018); see also McKaskle v. Wiggins, 465 U.S. 168, 183 (1984) ("A

4    defendant does not have a constitutional right to choreograph special appearances by counsel.");

5    Pizzuto v. Arave, 280 F.3d 949, 968 (9th Cir. 2002).  Although petitioner cites Faretta v.

6    California, 422 U.S. 806, 819-20 (1975), to support his argument, there is no evidence that

7    petitioner did not acquiesce to being represented by his counsel at his trial or that he requested

8    replacement of counsel.  Defense counsel, therefore, acted within his limits when he declined to

9    make the requested motion.

10            ii.    Ineffective Assistance of Counsel for Failing to File and Argue a New Trial

11                    Motion (Claim Eight)

12        Next, petitioner claims that his counsel was ineffective for failing to file a new trial

13    motion.  To state an ineffective assistance of counsel claim, a defendant must show that his

14    counsel's performance was deficient and prejudiced him.  Strickland, 466 U.S. at 687.  For the

15    deficiency prong, "a court must indulge a strong presumption that counsel's conduct falls within

16    the wide range of reasonable professional assistance; that is, the defendant must overcome the

17    presumption that, under the circumstances, the challenged action 'might be considered sound trial

18    strategy.'"  Id. at 689 (citation omitted).  For the prejudice prong, the defendant "must show that

19    there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

20    proceeding would have been different.  A reasonable probability is a probability sufficient to

21    undermine confidence in the outcome."  Id. at 694.  When § 2254(d) applies, the "question is

22    whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."

23    Richter, 562 U.S. at 105.

24        Here, the state court could have reasonably concluded that defense counsel's refusal to

25    make a new trial motion was neither deficient nor prejudicial.  Defense counsel considered

26    making the motion and choose not to as part of his sentencing strategy.  Specifically, the

27    prosecutor identified the error in the verdict forms after the jury announced the verdict, and

28    defense counsel argued that the Information is "sufficient to address any issues that may have

1    arisen because of that inconsistency between the Information and the verdict forms." (ECF No.

2    12-6 at 45-46.)  At sentencing, defense counsel told the court that his client wanted him to make a

3    motion for a new trial after the trial.  (Id. at 54.)  Defense counsel, however, decided not to make

4    that motion, stating that "the inconsistencies in the verdict forms put my client in a better position

5    with regard to arguing for concurrent versus consecutive" indeterminate terms.  He also stated

6    that "there are no colorable grounds for a motion for a new trial," he would not be filing

7    petitioner's motion, and sentencing should proceed.  (Id. at 54-61; see also ECF No. 12-2 at 61

8    (petitioner's letter to the court asking for a new trial.))  Because his decision not to file the motion

9    was based on tactical reasons and the motion would have been futile, the state court could have

10   reasonably concluded that defense counsel's performance was not deficient.  See Rupe v. Wood,

11   93 F.3d 1434, 1445 (9th Cir. 1996); Boatman v. Beard, No. ED CV 15-02271, 2017 WL

12   3888225, at *23 (C.D. Cal. June 19, 2017), adopting report and recommendation, 2017 WL

13   3887851 (C.D. Cal. Sept. 1, 2017).  Even if defense counsel's performance was deficient, the

14   state court could have reasonably concluded that his performance was not prejudicial.  As the

15   state court noted, the sentences for counts 8 to 10 ran concurrently, which is consistent with

16   defense counsel's strategy behind not moving for a new trial.

17        The state court's decision was not contrary to, or an unreasonable application of, clearly

18   established Supreme Court authority.  Accordingly, this Court recommends denying habeas relief

19   on claims six and eight.

20        F. Ineffective Assistance of Counsel Regarding Witnesses and Evidence (Claim Seven)

21        Petitioner claims that defense counsel was constitutionally ineffective by failing to call

22   witnesses and present exculpatory evidence.  (ECF No. 1 at 82-86.)  Specifically, petitioner

23   contends that his counsel should have called (1) Anthony Morse, (2) David Duncan, (3) Elizabeth

24   Jackson, and (4) a defense expert witness.

25        In response, respondent argues petitioner fails to offer any evidence as to what these

26   witnesses would have testified to, or that they were available to testify during trial.  (ECF No. 11

27   at 41.)  Additionally, respondent states that defense counsel was not deficient in not calling the

28   witnesses, nor was his performance prejudicial.  (Id.)

Petitioner raised these claims in a state habeas petition in the Placer County Superior

Court.  (ECF No. 12-15.)  The superior court considered his claim and rejected it.

> The petitioner further seeks habeas relief claiming IAC for his trial counsel's failure to call witnesses and his failure to present exculpatory statements of these witnesses.  In the context of a habeas request based upon IAC, it is the petitioner's burden in a habeas petition to state a prima facie case that he is entitled to relief.  (California Rule of Court 4.551(c)(1).)  For a claim of ineffective assistance of counsel, there are two important components: "deficient performance of counsel and prejudice to the petitioner." (*In re Cox* (2003) 30 Cal. 4th 974, 1019.)
>
> With respect to the first component, deficient performance is defined as representation below an objective standard of reasonableness. (*People v. Ledesma* (1987) 43 Cal.3d 171, 216, 217.)  Prejudice is defined as "a reasonable probability that a more favorable outcome would have resulted." (*In re Cox* at 1020.)  If there is an insufficient showing on either one of these components, the ineffective assistance claim fails.  Moreover, ' "a court need not determine where counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." [Citation.].'" (*People v. Rodrigues*, 8 Cal.4th at p. 1126.)" (*People v. Holt* (1997) 15 Cal.4th 619, 703.)
>
> Petitioner claims there were four witnesses that he wanted to call but his trial counsel refused to do so: 1.) Anthony Morse, Jane Doe #3's brother who he alleges was present in New York despite the victim claiming otherwise; 2.) David Duncan, who allegedly can rebut the victim's claim that he stayed at her residence; 3.) Elizabeth Jackson, defendant's girlfriend who could have apparently testified to being present during an incident that was misinterpreted as sexual in nature by the victim, and who could have provided character evidence about the victim's veracity; and 4.) an expert witness to rebut the prosecution's expert.
>
> Generally, whether to call certain witnesses is a matter of trial tactics for the attorney, unless the decision resulted from an unreasonable failure to investigate.  (*People v. Bolin* (1998) 18 Cal.4th 297, 334.)  Tactical errors are generally not deemed reversible, and counsel's decision making must be evaluated in the context of the available facts.  (*Strickland v. Washington* (1984) 466 U.S. 669, 690.)  In that regard, petitioner simply has made conclusory allegations without providing available copies of the discovery including interviews and police reports so that the court could evaluate the context of his claims.  Such deficiencies can be a basis for denial.  (*People v. Duvall* (1995) 9 Cal.4th 464, 474.)
>
> With respect to the issue of prejudice, petitioner has similarly failed to make a sufficient showing.  For example, as to Jane Doe #3, he had admitted to having sexual intercourse with her a couple of times in New York.  (Court of Appeal Decision, Third Appellate District, C086129, filed July 16, 2019, P. 3-4.)  As to the failure to call an expert, he does not specifiy who that would be or what the expert

1
2
3
4

would say to rebut specific testimony at trial. His counsel presented argument to rebut Dr. Urquiza's testimony, and he has not shown another expert would have changed the outcome. With respect to Elizabeth Jackson, the petitioner failed to include any of her statements or interviews to police so that the court could examine the prejudice. He did not provide any information to the court that she was available and willing to testify.

5
6
7
8

In a habeas petition, it is the petitioner's burden to state a prima facie case that he is entitled to relief. (California Rule of Court 4.551(c)(1); *In re Bower* (1985) 38 Cal.3d 865, 872; *In re Hochberg* (1970) 2 Cal. 3d 870, 875, fn 4.) In the present case, he has failed to state a prima facie basis for relief. Accordingly, his petitioner is denied.

9   (ECF No. 12-17.) He also raised this claim in habeas petitions before the California Court of

10   Appeals and California Supreme Court, but both courts denied the claim. (ECF Nos. 12-18 to 21-

11   21.)

12        To state an ineffective assistance of counsel claim, petitioner must show both that defense

13   counsel's performance was deficient and prejudicial. Strickland, 466 U.S. at 687. Relevant here,

14   defense "counsel has a duty to make reasonable investigations or to make a reasonable decision

15   that makes particular investigations unnecessary." Strickland, 466 U.S. at 691; see also Duncan

16   v. Ornoski, 528 F.3d 1222, 1234 (9th Cir. 2008). "Counsel's investigation must, at a minimum,

17   permit informed decisions about how best to represent the client." Cox v. Ayers, 613 F.3d 883,

18   893 (9th Cir. 2010). However, "strategic choices about which lines of defense to pursue are owed

19   deference commensurate with the reasonableness of the professional judgments on which they are

20   based." Strickland, 466 U.S. at 681; see also Wiggins v. Smith, 539 U.S. 510, 533 (2003);

21   Hamilton v. McDaniel, 408 F. App'x 86, 87 (9th Cir. 2011). "'[T]he duty to investigate and

22   prepare a defense is not limitless,' and ... 'it does not necessarily require that every conceivable

23   witness be interviewed or that counsel must pursue every path until it bears fruit or until all

24   conceivable hope withers.'" Hamilton v. Ayers, 583 F.3d 1100, 1129 (9th Cir. 2009) (citation

25   omitted). In particular, "[f]ew decisions a lawyer makes draw so heavily on professional

26   judgment as whether or not to proffer a witness at trial." Lord v. Wood, 184 F.3d 1083, 1095 (9th

27   Cir. 1999); see also Black v. Larson, 45 F. App'x 653, 655 (9th Cir. 2002); Riley v. Payne, 352

28   F.3d 1313, 1318 (9th Cir. 2003) ("Of course, counsel need not interview every possible witness to

34

1    have performed proficiently.")

2          Courts have denied ineffective assistance of counsel claims for failure to call a witness at

3    trial when petitioner does not explain what the witness's testimony would have been or how

4    would have altered the outcome of the trial.  See, e.g., United States v. Berry, 814 F.2d 1406,

5    1409 (9th Cir. 1987).  There must also be evidence that the witness would testify at trial.  See,

6    e.g., United States v. Harden, 846 F.2d 1229, 1231-32 (9th Cir. 1988).  Generally, these

7    requirements are satisfied by an affidavit or declaration from the witness.  Dows v. Wood, 211

8    F.3d 480, 486 (9th Cir. 2000); Morris v. State of Cal., 966 F.2d 448, 455-56 (9th Cir.

9    1992) ("[W]ishful suggestions" as to what a witness might say "cannot substitute for declaratory

10   or other evidence.")  Here, petitioner does not offer any declarations or evidence to prove what he

11   claims the witnesses would have testified to.  Furthermore, some the witnesses may have been

12   unavailable at trial. (ECF No. 1 at 82 (petitioner stating that he told defense counsel he did not

13   know where Morse lived); id. at 84 (petitioner stating that Jackson had gall bladder removal at the

14   time of trial). These deficiencies doom his claim.  As explained further below, fairminded jurists

15   could also agree with defense counsel's tactical decision to not call the witnesses to testify.

16         First, petitioner claims that Anthony Morse, D's brother, could have rebutted D's claim

17   that no one was home when petitioner forced D to have sex with him. (ECF No. 1 at 82.)  But

18   whether someone else was home is a tangential issue.  It does not rebut D's testimony that

19   petitioner had forcible sex with her, or that petitioner also forced her to have sex with him on

20   separate occasions, and that he was previously convicted for forcible sex.  (ECF No. 12-4 at 183-

21   93.)  The state court could have reasonably concluded that defense counsel did not want to draw

22   attention to petitioner's prior conviction.

23         Second, petitioner asserts that David Duncan, petitioner's brother and D's uncle, could

24   have rebutted D's testimony that petitioner spent the night at his house in California, where

25   petitioner assaulted D for the first time. (ECF No. 1 at 83.)  Whether petitioner was living at that

26   house or merely staying there the night of the assault is inconsequential.  Petitioner does not claim

27   that Duncan can provide any evidence to rebut the facts surrounding the incident.  To the

28   contrary, there is evidence in the record that Duncan confronted petitioner after an inappropriate

encounter.  (ECF No. 12-2 at 46 ("That's your niece. You're not supposed to touch her like that. Stay away from her."); ECF No. 12-1 at 201-02 ("Duncan recalled finding the Defendant and JD3 in a back bedroom.  Duncan claimed to have trouble recalling the incident, but said that what he saw was inappropriate and sexual in nature. They were lying in bed and the Defendant was grabbing JD3's breasts while JD3 tried to push him off.  Duncan said he was very upset by it and told the Defendant to stop."); ECF No. 12-4 at 66.)  When the prosecutor decided not to call Duncan to testify, petitioner stated that defense counsel said "that was a good thing."  (ECF No. 1 at 83.)  A state court could reasonably conclude that defense counsel was not deficient for choosing not to call Duncan to testify as it would have provided further testimony on the assault.

Third, petitioner claims that defense counsel should have called Elizabeth Jackson, his girlfriend, to testify to "her side of the story," including whether he touched a victim with a vibrator and whether one of the victim's is a compulsive liar.  (ECF No. 1 at 84.)   This hypothetical testimony is insufficient to suggest defense counsel was deficient.  As to the vibrator, the victim's testimony about petitioner placing a small, silver bullet vibrator on her lower back right above her bottom was corroborated by a matching vibrator in a drawer of sex toys in Petitioner's bedroom.  (ECF No. 12-5 at 27-29; id. at 140, 231-32.)  As the character of the other victim, the defense counsel could have reasonably determined that Jackson's testimony was not necessary; K testified regarding Ke's character for honesty and her statement that Ke was a compulsive liar.  (Id. at 262-64.)  A fairminded jurist could reasonably agree with defense counsel that Jackson's testimony was not necessary.

Lastly, petitioner takes issue with defense counsel's decision not to call an expert to rebut the state's expert.  (ECF No. 84-85.)  Deciding whether or not to hire an expert is a strategic decision that is entitled to a strong presumption of reasonableness.  Dunn v. Reeves, 145 S. Ct. 2405, 2410 (2021) (per curiam).  Here, petitioner cannot overcome this presumption because he presents no evidence to rebut it.  Furthermore, petitioner fails to offer any evidence as to what the expert would have testified to and how it would have changed the outcome of the trial.  Any speculation as to what an expert would have said is insufficient to establish prejudice for an ineffective assistance of counsel claim.  See Wildman v. Johnson, 261 F.3d 832, 839 (9th Cir.

1    2001).  Based on this Court's review of the record, defense counsel both cross-examined the

2    prosecutor's expert and addressed his testimony in closing argument.  (ECF No. 12-5 at 185-88;

3    ECF No. 12-6 at 16-17.)

4          This Court concludes that the state court's decision rejecting petitioner's ineffective

5    assistance of counsel claim was not contrary to, or an unreasonable application of, clearly

6    established Supreme Court authority and recommends denying habeas relief on this claim.

7          G.   Cumulative Error (Claims Four and Nine)

8          Petitioner's claims that the cumulative effect of the errors alleged herein constitute a

9    denial of due process.  The state appellate court rejected this claim.  (ECF No. 12-12 at 23.)

10         The Ninth Circuit has concluded that under clearly established United States Supreme

11   Court precedent the combined effect of multiple trial errors may give rise to a due process

12   violation if it renders a trial fundamentally unfair, even where each error considered individually

13   would not require reversal.  Parle v. Runnels, 505 F.3d 922, 927 (9th. Cir. 2007) (citing Donnelly,

14   416 U.S. at 643, and Chambers v. Mississippi, 410 U.S. 284, 290 (1973)).  "[T]he fundamental

15   question in determining whether the combined effect of trial errors violated a defendant's due

16   process rights is whether the errors rendered the criminal defense 'far less persuasive,' and

17   thereby had a 'substantial and injurious effect or influence' on the jury's verdict."  Parle, 505 F.3d

18   at 928 (internal citations omitted); see also Hein, 601 F.3d at 916.

19         This court has addressed each of petitioner's claims and has concluded that no error of

20   constitutional magnitude occurred.  This court also concludes that the alleged errors, even when

21   considered together, did not render petitioner's defense "far less persuasive," nor did they have a

22   "substantial and injurious effect or influence on the jury's verdict."  Accordingly, petitioner is not

23   entitled to relief on his claim of cumulative error.

24   VI.  Conclusion

25         Accordingly, for all of the reasons set forth above, IT IS HEREBY RECOMMENDED

26   that petitioner's application for a writ of habeas corpus be denied.

27         These findings and recommendations are submitted to the United States District Judge

28   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

1    after being served with these findings and recommendations, any party may file written

2    objections with the court and serve a copy on all parties.  Such a document should be captioned

3    "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

4    he shall also address whether a certificate of appealability should issue and, if so, why and as to

5    which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the

6    applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

7    § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after

8    service of the objections.  The parties are advised that failure to file objections within the

9    specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

10    F.2d 1153 (9th Cir. 1991).

11    Dated:  August 1, 2022

12

13                             KENDALL J. NEWMAN
                               UNITED STATES MAGISTRATE JUDGE

14

15    /TAA/mors1667.157

16

17

18

19

20

21

22

23

24

25

26

27

28